FILED

**IN THE DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(RICHMOND DIVISION)**

2020 SEP 16 P 2: 09

CLERK DISTRICT COURT
RICHMOND, VIRGINIA

| | | |
|---|---|---|
| *In Re* MAJOR MIKE WEBB | ) | |
| | ) | |
| ------------------------------------------------ | ) | |
| MICHAEL D. WEBB, *et al.* | ) | |
|     Petitioner, Pro Se | ) | |
| | ) | Civil Action No. **3:20-cv-00734-MHL** |
|     v. | ) | |
| | ) | Petition for Writ of Mandamus |
| STATE BOARD OF ELECTIONS | ) | and Injunction |
|     Respondents | ) | |
| | ) | **Emergency Hearing: Thursday,** |
| | **)** | **September 6, 2020, at TBD** |
| | ) | |
| | ) | |

## <u>VERIFIED COMPLAINT</u>

### <u>Introduction</u>

1. In mitigation of potential damages to be incurred when the early voting procedures commence on September 18, 2020, Petitioner Major Mike Webb, *Pro Se,* hereinafter "Webb," in accordance with Fed.R.App.Pro. 21, hereby, commences this emergency *ex parte* application in petition to the Federal District Court for the Eastern District of Virginia, Richmond Division for issue of a Writ of Mandamus, seeking removal, pursuant to the *All Writs Act,* 28 U.S.C. § 1651, which provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law," as well as that "[a]n alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction."

2. On June 22, 2020, in the Circuit Court for the City of Richmond, Petitioner's action seeking application of a "pandemic exception," recognized in the matter, *Omari Faulkner for Virginia, et al. v. Virginia Department of Elections, et al.,* Case No. CL-20-1456 (Richmond GDC. 2020), *on appeal Omari Faulkner for Virginia, et al. v. Virginia Department of Elections, et al.,* Case No. VLW 020-8-024 (Richmond Cir. 2020), for candidate petitions requiring a total of 1,000 valid signatures, no later than June 9, 2020 at 7:00 p.m., pursuant to Va. Code § 24.2-503, was denied, with prejudice.

3. In the *Omari Faulkner for Virginia* decision, the Richmond Circuit Court granted an allowance, on account of the current public health crisis, and consequent regulations, for the plaintiff to qualify for the primary ballot with only approximately one third of the statutory

requirement, and, being similarly situated, Petitioner sought application of that rule, which was contested by Respondent.

4.  The matter has been noticed for appeal to the Virginia State Supreme Court, which, to date, has not acknowledged the action, and, on September 18, 2020, the voters in the Commonwealth will begin the modified early voting procedures, permitting voting by mail, as well as absentee in person.

## **Relief Sought**

5.  Petitioner seeks from the Court of Appeals for the Federal Circuit, in accordance with equal protection, and in defense of content-based free speech, a writ of mandamus to compel Respondent to recognize for Petitioner the pandemic exception granted to the plaintiff in in *Omari Faulkner for Virginia, et al. v. Virginia Department of Elections, et al.*, Case No. CL-20-1456 (Richmond GDC. 2020), *on appeal Omari Faulkner for Virginia, et al. v. Virginia Department of Elections, et al.*, Case No. VLW 020-8-024 (Richmond Cir. 2020), as well as recognized for absentee voters in the June primaries by two recent orders issued, upon the request of the State Attorney General.

6.  Petitioner requests that the writ of mandamus compel Respondent, when publishing his name to use his proper legal name, *i.e.*, Major Mike Webb, as required by law, and, on evidence, not used on prior publications, in demonstration of bad faith.

7.  Petitioner further, in light of a demonstration of clear bad faith on the part of Respondent, prays the Court to enjoin the opening of the early voting period until such time as required for Respondent to correct the ballot for which Petitioner should have been determined as qualified when he commenced the original action in July.

## **Issue Presented**

8.  Whether denial of a pandemic exception for Petitioner to qualify for the ballot with a reduced threshold, akin to the pandemic exception recognized in *Omari Faulkner for Virginia, et al. v. Virginia Department of Elections, et al.*, Case No. CL-20-1456 (Richmond GDC. 2020), *on appeal Omari Faulkner for Virginia, et al. v. Virginia Department of Elections, et al.*, Case No. VLW 020-8-024 (Richmond Cir. 2020) for a Republican primary candidate, permitting a two third reduction in the required signatures for qualification, would constitute a violation of the Equal Protection Clause, demonstrating disparate treatment between similarly situated parties, especially in light of the pandemic exception granted to absentee voters in two recent orders by the Federal District Court for the Eastern District of Virginia, Richmond Division.

## **Jurisdiction**

9.  Under the *All Writs Act*, 28 U.S.C. § 1651(a)-(b), "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their

respective jurisdictions and agreeable to the usages and principles of law. . . An alternative writ or rule nisi may be issued by a justice or judge of a court which has jurisdiction."

10. Pursuant to Fed.R.App.Pro. 21(A)(1), "[a] party petitioning for a writ of mandamus or prohibition directed to a court must file a petition with the circuit clerk and serve it on all parties to the proceeding in the trial court."

11. Pursuant to 28 U.S. Code § 1331, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States", and Petitioner presents a federal question, arising under the *Equal Protection Clause* of the *Fourteenth Amendment*, with connection to the *First Amendment*, arising from regulations of content-based free speech, which must be content neutral and are subjected to strict scrutiny. *Reed v. Town of Gilbert*, Ariz., 135 S. Ct. 2218, 2222, 192 L. Ed. 2d 236 (2015).

12. Pursuant to 28 U.S. Code § 1441(C)(1), a civil action may be removed to federal court, if it includes "(A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and (B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute, the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).

13. The Courts of Appeal, historically have been reluctant to exercise their mandamus powers, and their role was refined in *La Buy v. Howes Leather Co.*, 352 U.S. 249. 77 S.Ct. 309. 1 L.Ed.2d 290 (1957).

14. There is no doubt with regard to the extent of a court's powers to ensure the administration of justice, as described, in part, in *Link v. Wabash R. Co.*, 370 U.S. 626, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962):

> The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts. The power is of ancient origin, having its roots in judgments of nonsuit and *non prosequitur* entered at common law, *e.g.*, 3 Blackstone, Commentaries (1768), 295—296, and dismissals for want of prosecution of bills in equity, *e.g.*, *id.*, at 451. It has been expressly recognized in Federal Rule of Civil Procedure 41(b), which provides, in pertinent part: '(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. * * * Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits.'

15. And, generally, a Court of Appeal will even exercise this almost plenary authority within its "inherent powers," *In re Parikh*, 508 B.R. 572 (Bankr. E.D.N.Y. 2014) ("A non-party may

only be sanctioned pursuant to the Court's inherent power if they (1) violate a specific Court order or (2) act in bad faith, have a substantial interest in the litigation, and play a substantial role in the litigation. *Amerisource Corp. v. Rx USA Int'l Inc.*, 02–CV–2514 (JMA), 2010 WL 2730748 at *5–6 (E.D.N.Y. July 6, 2010) *aff'd sub nom.*"), *see also U.S. v. Moussaoui*, 483 F.3d 220 (4th Cir.2007) ("federal courts possess the inherent authority to sanction a party and lawyer appearing before the court"), in circumstances where "the aggrieved party has no adequate alternative," A. James Robert, III, *Mandamus Proceedings in the Federal Courts of Appeals: A Compromise with Finality*, 52 Ca.L.Rev. 5, 1036-1050, (1964) (citing in example, *Ex Parte Fahey*, 332 U.S. 258, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947) ("invoking the original jurisdiction of this Court and asking leave to file petition for writ of mandamus, prohibition, or injunction against a District Judge to vacate his order allowing fees to counsel in *Fahey v. Mall*onee, ante, p. 245, to prohibit any further allowance therein, and to enjoin any payments heretofore allowed, denied, p. 260."); *Ex parte Harding*, 219 U.S. 363, 31 S. Ct. 324, 55 L. Ed. 252 (1911) (seeking "the reversal of the action of the Circuit Court of the United States for the Northern District of Illinois, Eastern Division, in taking jurisdiction over a cause as the result of a refusal to grant a request of Harding to remand the case to a state court.").

16. Moreover, "the inherent power also allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944); *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946).

17. As noted in *Davis v. Glanton*, 107 F.3d 1044 (3rd Cir. 1997), "[a] district court, in exceptional circumstances, may use its authority under the *Act* to remove an otherwise unremovable state court action to 'prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.' *United States v. New York Tel. Co.*, 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977)," and, while this action is removable, such extraordinary circumstances within the present matter would effect frustration of orders previous orders without an action from this Court.

18. The United States Supreme Court has authorized the use of the *All Writs Act* for the purposes of enjoining a party, provided that it is "defined by 'what is the usage, and what are the principles of equity applicable in such a case.'" *Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund, Inc.*, 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) (quoting *De Beers Consol. Mines, Ltd. v. U.S.*, 325 U.S. 212, 219, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945)), and such power has been recognized repeatedly against litigants under the rationale that "federal courts have broad powers to protect their judgments and the integrity of the courts as a whole. Simcox v. McDermott Int'l, Inc., 152 F.R.D. 689, 691–701 (S.D. Tex. 1994) (citing *Villar v. Crowley Maritime Corp.*, 780 F.Supp. 1467 (S.D.Tex.1992), *aff'd*, 990 F.2d 1489 (5th Cir.1993); *In re Martin–Trigona*, 737 F.2d 1254 (2d Cir.1984).), and principles of equity dictate, in this case, that the equal protection, as well as content-based speech at issue, makes the usage of the *Act* proper, nor does such action impose an unreasonable burden. *U.S. v. New York Tel. Co.*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977).

-4-

**Standing**

**19.** In accordance with Fed.R.App.Pro. 21(a)(1), "[a] party petitioning for a writ of mandamus or prohibition directed to a court must file a petition with the circuit clerk with proof of service on all parties to the proceeding in the trial court." Petitioner is a party in *Michael D. Webb, et al. v. State Board of Elections*, Case No. CL20-2459-00, a matter dismissed on June 22, 2020, and currently on notice of appeal to the Virginia State Supreme Court, albeit, to date, not yet acknowledged by that appellate tribunal.

**Procedural History**

**20.** In the midst of a pandemic crisis that has radically transformed the nation, and which has even brought allowances for citizens engaging in the electoral process as voters, *see Steve Rappaport, "Senator Mark Warner sponsors Natural Disaster and Emergency Ballot Act," NBC29, April 8, 2020*; *see also* Staff, "Filing and Payment Deadline Extended to July 15, 2020 - Updated Statement," *IRS*, March 21, 2020 (granting extensions for filing tax returns a transaction that requires no public contact," the same court in which this action was brought had recognized an exception for candidates seeking qualification for the November ballot, which would enable them to qualify with roughly one third of the statutory requirement, *Omari Faulkner for Virginia, et al. v. Virginia Department of Elections, et al.*, Case No. CL-20-1456 (Richmond GDC. 2020), *on appeal Omari Faulkner for Virginia, et al. v. Virginia Department of Elections, et al.*, Case No. VLW 020-8-024 (Richmond Cir. 2020).

**21.** However, in an action in which the Commonwealth was reluctant to enter an appearance on behalf of Respondent Virginia State Board of Elections, in a limited appearance filed a motion to dismiss Petitioner's action on suspect grounds, dispatching a total of three attorneys on the day of the primary election to argue the rescheduled hearing, which motion to dismiss was granted.

**Statement of the Facts**

**22.** "In-person absentee voting begins Sept. 18, and the state faces a Sept. 19 deadline to mail absentee ballots, which are in high demand this year due to the novel coronavirus pandemic." Laura Vozella, "Kanye West appeals decision to remove him from Virginia ballot," *Washington Post*, September 9, 2020.

**23.** Looking ahead to the November election, some analysts predict one of three scenarios, all of which assume that the Commonwealth of Virginia will deliver its 13 Electoral College Votes to the Democrat Party Nominee, just like it did in the 2016 presidential election: 1) "Trump wins 270 to 268 by holding on to the states he won in 2016, except for Michigan and Pennsylvania"; 2) "Biden wins 270 to 268 by winning the Clinton states plus Arizona, Michigan, Nebraska's 2nd Congressional District and Wisconsin"; 3) "Trump wins by 270 to 268 by winning New Hampshire and holding on to the states he won in 2016, except Arizona and Florida"; and 4) "Biden wins 270 to 268 by losing Minnesota but winning the Clinton states plus Arizona, Michigan, Nebraska's 2nd Congressional District and

Pennsylvania". Harry Enten, "These maps show how 2020 could come down to 1 electoral vote," *CNN*, September 5, 2020.

**24.** Donald Beyer, the incumbent in Virginia's 8th Congressional District, and heir apparent to a potentially vacated seat in the U.S. Senate in 2016, Katherine Frey, "If Kaine becomes vice president, McAuliffe can fill his Senate Seat," *Washington Post*, July 23, 2016, and Senator Mark Warner, as well as Tim Kaine, have a fate that rests in the hands of the most reliable Democrat district in the Commonwealth, David Wasserman & Ally Flinn, "Cook Partisan Voter Index for the 115th Congress," *The Cook Political Report*, April 7, 2017 (noting Respondent Beyer as the Democrat who recorded the highest upward shift, 6.1 points, from D+15 to D+21), and the kingmaker district of Arlington, determined to be the single locality with the power to decide all statewide elections. Patricia Sullivan, "Arlington County Democrats continue to dominate region's politics," *Washington Post*, November 7, 2017 ("The voters there are so solidly blue that they are among the Northern Virginians who usually provide the margin of victory for Democrats who win statewide.").

**25.** Shortly after the issue of a statewide facial covering mandate:

A lawsuit, filed in federal court in Alexandria by five residents of Fairfax County, and one from Prince William County, names Virginia's State Board of Elections and several elections officials as the defendants.

They argue the Board of Elections' emergency plan, spurred by Gov. Ralph Northam's Executive Order 56, unconstitutionally widens who can cast absentee ballots in the June 23 primary elections. Neal Augenstein, "Judge will be asked to rule Virginia's absentee ballot plan unconstitutional" *WTOP*, May 27, 2020. *See also* Gregory B. Hladky, "Republican lawsuit challenges expanded absentee ballot rules during pandemic," *Hartford Courant*, June 19, 2020.

**26.** One month prior, it was reported that:

The American Civil Liberties Union on Friday asked a federal court to block Virginia election officials from requiring that absentee voters find a witness to watch them sign their ballots, citing the social distancing guidelines prompted by the coronavirus pandemic.

In a lawsuit filed on behalf of three voters and the League of Women Voters, the ACLU argues the witness requirement could force absentee voters who live alone to choose between not voting or risking their health by asking another person to come to their homes to witness their signatures. Associated Press, "Virginia sued over witness requirement for absentee ballots," *ABC13*, April 17, 2020.

**27.** Almost simultaneously, in fact only two days before, litigation raising the issue of the pandemic, and subsequent regulations, and requesting Respondent SBE to grant an extension for soliciting signatures for candidate petitions, pursuant to Va. Code § 24.2-503, not later than June 9, 2020, had a petition for temporary restraining order denied, on rationale that it

would not prevail on the merits, and finding no infringement of rights consequent to the regulations nor public health emergency, a matter in which the Governor, State Health Commissioner Mohammed Norman Oliver, the Virginia Department of Health, SBE Chairman Robert Brink nor Respondent SBE deigned to enter an appearance, and which was dismissed for lack of a justiciable issue on June 23, 2020, a matter now on appeal to the State Supreme Court. *Webb v. Northam*, Case No. CL20001624 (Alexandria Cir. 2020).

28. In a separate matter, making a limited appearance, the Attorney General, as counsel for Respondent SBE argued, pursuant to the doctrine of *res judicata*, jurisprudentially inapplicable to them after failing to enter an appearance as a party, *Bates v. Devers*, 214 Va. 667, 670, 202 S.E.2d 917, 920 (1974), that that matter was rightly decided, and used in their motion to dismiss a case in which Petitioner sought the pandemic exemption granted to another party in in *Omari Faulkner for Virginia, et al. v. Virginia Department of Elections, et al.*, Case No. CL-20-1456 (Richmond GDC. 2020), *on appeal Omari Faulkner for Virginia, et al. v. Virginia Department of Elections, et al.*, Case No. VLW 020-8-024 (Richmond Cir. 2020) to permit a reduction in the amount of signatures required to qualify for appearance on the ballot under Va. Code § 24.2-506, in fulfillment of his statutory right granted under Va. Code § 24.2-504. *Webb v. SBE*, Case No. CL20-2459-00 (Richmond Cir. 2020). That matter, too, is on appeal to the Virginia State Supreme Court.

29. At the end of August, it was reported:

> Virginia Attorney General Mark Herring announced Friday that a federal court has approved a consent decree negotiated by his office that promotes safe absentee voting in November's general election.
>
> (backslash)In a news release, Herring said that under the consent decree, Virginia will accept absentee ballots without the signature of a witness "for voters who believe they may not safely have a witness present while completing their ballot."
> "This agreement is another big win for Virginia voters and for democracy, and it's another important step in ensuring that we can have free, fair, safe elections this fall despite the challenges presented by the COVID pandemic," Herring said. Associated Press, "Court OKs Virginia AG's agreement to promote absentee voting," *AP*, August 21, 2020.

30. That report concluded, noting:

> The order was approved by Judge Norman K. Moon, who noted objections to absentee ballots raised by the Republican Party of Virginia.
>
> A group of voters had sued Virginia election officials in May over a loosening of restrictions on absentee ballots for the June primary, arguing that the state can't allow voters to use the pandemic as an excuse to vote by mail.
>
> Moon wrote that despite the GOP objections to the agreement, "every indication before the Court is that the June primary was conducted without the witness signature

requirement and without any corresponding increase in voter confusion or election fraud."

Herring previously reached an agreement, also approved by Moon, to promote safe voting by mail for the June 23 primaries by allowing acceptance of absentee ballots without a witness signature." *Id.*

**31.** On August 25, 2020, the Federal District Court for the Eastern District of Virginia dismissed a facial and as applied challenge to the facial coverings mandate, *Webb v. Northam*, Civil Action No. 3:20CV497 (E.D.Va. 2020), after requiring an amendment to a complaint brought that attempted to summarize science that even scientists have admitted not to fully understand, Mike Baker & Sherri Fink, "Covid-19 Arrived in Seattle. Where It Went from There Stunned the Scientists," *New York Times*, April 22, 2020, *updated* July 6, 2020[1], describing the complaint as a compilation of mere "criticisms" and "enigmatic allegations" even "liberally construed", a matter now on appeal to the Fourth Circuit, after the court dismissed the reduced 34 page complaint, raising issues that pierce the veil of judicial immunity. *See Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

## RATIONALE FOR ISSUE OF A WRIT OF MANDAMUS

**32.** As noted above, under the *All Writs Act*, 28 U.S.C. § 1651(a)-(b), "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law. . . An alternative writ or rule *nisi* may be issued by a justice or judge of a court which has jurisdiction," notwithstanding the fact that the Courts of Appeal, historically have been reluctant to exercise their mandamus powers, and their role was refined in *La Buy*, 352 U.S., at 249. 77 S.Ct., at 309, 1 L.Ed.2d, at 290. Nonetheless, it is proper for Courts of Appeal to exercise this authority in instances where, upon a showing of clear and convincing evidence, there exist extraordinary circumstances, where no adequate alternative exists, such as, *Fahey*, 332 U.S., at 258, 67 S.Ct., at 1558, 91 L.Ed., at 2041. *See also Harding*, 219 U.S., at 363, 31 S. Ct., at 324, 55 L. Ed., at 252, as well as upon a demonstration of fraud upon the court. *Chambers,* 501 U.S., at 32, 111 S.Ct., at 2123, 115 L.Ed.2d, at 27. *See also Hazel-Atlas Glass Co.*, 322 U.S., at 238; *Universal Oil Products Co.*, 328 U.S., at 575.

### Extraordinary Circumstances

**33.** The *All Writs Act* exists to promote uniformity in application of orders in a jurisdiction, and reviewing the facts at bar, like the Court in *Link v. Wabash R. Co.*, 370 U.S. 626, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962), the reasonable person can only opine aloud, "I think that nothing short of clairvoyance would have enabled either of them to anticipate that this Court,

---

[1] "Sixty-eight people — the ride-share driver at the airport, the lunchmates at the seafood restaurant, the other patients at the clinic where the man was first seen — were monitored for weeks. To everyone's relief, none ever tested positive for the virus." *Id.*

or any court, would approve dismissal," but probably these facts seem more plausible in our currently highly partisan and politically contentious times, where, according to researchers at the Pew Research Center, we are a nation divided, "not because they have any great support for the policies of that party," but because of "negative views of the policies of the opposing party." Niraj Chokshi, "U.S. Partisanship Is Highest in Decades, Pew Study Finds," *New York Times*, June 23, 2016.

### *Abject Disparate Treatment*

34. While it is clear, under the laws of the Commonwealth, "*rationally based* distinctions between similarly situated adults" may lawfully exist, *Gray v. Commonwealth*, 274 Va. 290, 645 S.E.2d 448, 451–64 (2007); however, it is a "fixed star in our constitutional constellation", *West Virginia State Bd. of Educ. v. Barnett*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), that "[t]he threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection claim analysis to be applied is determined by the classification used by the government decision-makers." *Glowacki ex rel. D.K.G. v. Howell Pub. Sch. Dist.*, No. 2:11-CV-15481, 2013 WL 3148272, at *1–22 (E.D. Mich. June 19, 2013) (quoting *Satawa v. Macomb Cnty. Road Comm'n*, 689 F.3d 506, 528 (6th Cir.2012)). And, Respondent has proffered no rationally based distinction in their initial dismissal, making their requests to grant both voters and other candidates an exemption evince the existence of an illegitimate state interest, specifically to alter the outcome of an election. Moreover, current projections for the November election, finding the reliable 13 Electoral College Votes of the Commonwealth the key swing factor illuminate clearly why Respondent would possess incentive to deny Petitioner qualification to the ballot in the sole congressional district acknowledged to have decided the outcome of statewide elections for the past two decades, a kingmaker congressional district.

### No Res Judicata

35. At the outset, it is of note that, with regard to substantive rights, the nation's highest court has held that neither *res judicata* nor collateral estoppel should serve as a bar to redress for grievances in at least some instances. *McDonald v. City of W. Branch*, 466 U.S. 284, 292, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984). And while it has long been held true in the Commonwealth that public records of general applicability, like patents, find safe harbor under the doctrine of *res judicata*, and "an instruction which gives to such entries any other or greater effect is erroneous," *Holleran v. Meisel*, 91 Va. 143, 21 S.E. 658, 658–60 (1895), in the Commonwealth, it is clear, and subject to no other interpretation, that the attendant issue preclusion for "[a] valid, personal judgment on the merits in favor of the defendant bars relitigation of the Same cause of action, or any part thereof which could have been litigated *between the same parties and their privies*." *Bates v. Devers*, 214 Va. 667, 670, 202 S.E.2d 917, 920 (1974). (emphasis added)

36. Even in other American jurisdictions the practically universal doctrine has been described as a claim of preclusion that "bars the re-litigation of claims that were raised or could have been raised in a prior proceeding," *Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882 (2013) (citing *Jaffree v. Wallace*, 837 F.2d 461 (11th Cir. 1988), and most trained in the law and

experienced in its practice know, or should have known that one asserting *res judicata* must establish four elements: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) *both cases must involve the same parties or their privies*; and (4) *both cases must involve the same causes of action.*" *Id.*, (citing *In re: Piper Aircraft*, 244 F.3d 1289 (11th Cir. 2001). (emphasis added)

**37.** Whether in the jurisprudence of the Commonwealth, or any other jurisdiction, it is abundantly clear to anyone trained in law and experienced in its practice that:

> 'Whenever inquiry is a duty, the party bound to make it is affected with knowledge of all which he would have discovered had he performed the duty. Means of knowledge, with the duty of using them, are, in equity, equivalent to knowledge itself.' *Kian v. Kefalogiannis*, 158 Va. 129, 163 S.E. 535 (1932) (quoting *Cordova v. Hood*, 84 U.S. 1, 21 L. Ed. 587, 17 Wall. 1, 1872 U.S. LEXIS 1304 (1873). *See also Smith v. Woodward*, 122 Va. 356, 94 S.E. 916 (1918) (quoting *Cordova, supra*).

**38.** Yet and still, by signed pleading, certifying that Respondent had "read the pleading, motion, or other paper, . . . to the best of his knowledge, information and belief, formed after reasonable inquiry, [that] it is well[-]grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and. . . it is not interposed for any improper purpose, such as to harass or to cause unnecessary[ily] delay or needless[ly] increase in the cost of litigation," in accordance with Va. Code § 8.01-271.1, did aver in a motion to dismiss that Petitioner's claim was barred by the doctrine of *res judicata*, based upon a ruling dismissing a motion for temporary injunctive relief, on April 15, 2020, in the matter of *Webb v. Northam,* CL20001624 (Alexandria Cir. 2020), a matter in which Respondent not only evaded the Sheriff for that municipality for service of process, but also refused to accept waiver of service, as "a matter of policy."

**39.**     In the congressional district that has decided the outcome of statewide elections for the past two decades, in which the incumbent has declared this election the most important one of his lifetime, as in evidence at Exhibit **A**, pitted against the top five fundraising challengers in the history of the district, a denial of access to the ballot for that challenger represents a chilling effect on the full array of liberties expressed in the *First Amendment*. The Petitioner's campaign was the first to bring a *Free Exercise Clause* legal challenge to the lockdown orders, the only litigant to raise the *Establishment Clause* in a challenge to facial coverings, in a campaign where the Fourth Estate has exercised a disciplined silence, despite retraction of liberties on rights to peaceable assembly and unlawful barriers to the rights to petition government to redress grievances.

**40.**     It is abundantly clear, therefore, there is no genuine issue of material fact regarding this matter of fact and law, subject to *de novo* review, *Loudoun Hosp. Ctr.*, 50 Va. App., at 478, 650 S.E.2d, at 879, was decided in error, in abuse of discretion, and should be reversed and remanded to the Trial Court for proper disposition.

**41.** Accordingly, it would behoove all concerned and the interests of justice to grant this petition for writ of mandamus to compel Respondent State Board of Elections to apply the pandemic exception that was granted to the plaintiff in *Omari Faulkner for Virginia* to him, as a similarly situated party is entitled under the *Equal Protection Clause*.

<u>No Application for the Doctrine of Laches</u>

**42.** In one Commonwealth case, ironically involving a claim of the absence of safety latches on a hoist apparatus, that court held that the manufacturer was not at fault in an instance where it was the purchaser's misuse that negligently contributed to his injury. *Turner v. Manning, Maxwell & Moore, Inc.*, 216 Va. 245, 217 S.E.2d 863 (1975), but, in jurisprudence, while, under the doctrine of laches, an affirmative defense be brought on "the ground that by his acquiescence and laches the plaintiff was estopped from contesting it," *Effinger v. Hall*, 81 Va. 94, 94–109 (1885), "[t]he doctrine of laches hails from equity, and is invoked when two essential elements exist: *inexcusable delay in instituting suit, and prejudice resulting to the defendant from such delay. U.S. v. One Toshiba Color Television,* 213 F.3d 147 (3d Cir. 2000) (citing also *Central Penn. Teamsters Pension Fund v. McCormick Dray Line, Inc.,* 85 F.3d 1098 (3d Cir.1996)). (emphasis added)  Moreover, at least under the federal rules, when applied against a void judgment, there may be no time limit at all against which such a defense may be brought on grounds that "a void judgment is no judgment at all." *Id.*

**43.** Under the *Preamble for the Rules of Professional Conduct*, "[i]n all professional functions a lawyer should be competent, prompt and diligent," and, moreover,

> A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials. While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process.

> As a public citizen, a lawyer should seek improvement of the law, the administration of justice and the quality of service rendered by the legal profession. As a member of a learned profession, a lawyer should cultivate knowledge of the law beyond its use for clients, employ that knowledge in reform of the law and work to strengthen legal education. A lawyer should be mindful of deficiencies in the administration of justice and of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance, and should therefore devote professional time and civic influence in their behalf. A lawyer should aid the legal profession in pursuing these objectives and should help the bar regulate itself in the public interest.

**44.** Furthermore, "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law," Rule 3.1; and also, under Rule 3.3:

(a) A lawyer shall not knowingly:

   *(1) make a false statement of fact or law to a tribunal;*

   *(2) fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client;*

   *(3) fail to disclose to the tribunal controlling legal authority in the subject jurisdiction known to the lawyer to be adverse to the position of the client and not disclosed by opposing counsel; or*

   *(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.*

(b) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false.

(c) In an *ex parte* proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.

(d) A lawyer who receives information clearly establishing that a person other than a client has perpetrated a fraud upon the tribunal in a proceeding in which the lawyer is representing a client shall promptly reveal the fraud to the tribunal.

(e) *The duties stated in paragraphs (a) and (d) continue until the conclusion of the proceeding, and apply even if compliance requires disclosure of information protected by Rule 1.6.* (emphasis added)

**45.** Moreover, under Rule 3.4, "[a] A lawyer shall not:"

(a) *Obstruct another party's access to evidence or alter, destroy or conceal a document or other material having potential evidentiary value for the purpose of obstructing a party's access to evidence. A lawyer shall not counsel or assist another person to do any such act.*

(b) *Advise or cause a person to secrete himself or herself or to leave the jurisdiction of a tribunal for the purpose of making that person unavailable as a witness therein.*

(c) *Falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law. . .*

    (d) *Knowingly disobey or advise a client to disregard a standing rule or a ruling of a tribunal made in the course of a proceeding*, but the lawyer may take steps, in good faith, to test the validity of such rule or ruling.

    (e) Make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party.

    (f) In trial, *allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused.*

    (g) *Intentionally or habitually violate any established rule of procedure or of evidence, where such conduct is disruptive of the proceedings.* (emphasis added)

46. Regarding "bad faith" by prosecutors, courts "'[apply] a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence'," *Wasman v. U.S.*, 468 U.S. 559, 104 S. Ct. 3217, 82 L. Ed. 2d 424 (1984) (citing *U.S. v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)), "requiring that 'the factual data upon which the increased sentence is based' be made part of the record, of course, is that the 'constitutional legitimacy,' of the enhanced sentence may thereby be readily assessed on appeal." *Id.* In court procedure, bad faith can be demonstrated through "undue delay, bad faith or dilatory motive." *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962), in addition to "a repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment." *Doyle v. S.C. Democratic Party*, No. CIV.A. 3:10-203-MBS, 2010 WL 6420673, at *1–6 (D.S.C. Sept. 2, 2010), *report and recommendation adopted*, No. 3:10-CV-0203-MBS, 2011 WL 1261574 (D.S.C. Mar. 31, 2011) (citing *id.*).

47. Nonetheless, legal ethics and precepts of good faith notwithstanding, Respondent presented an unrepresented litigant with a defense of laches for the first time on the day of hearing, presumptively assuming that a *pro se* litigant would not be familiar with the affirmative defense, and averring, without any demonstration of prejudice, that the statutory deadline for submission of petitions tolled on June 9, 2020, Va. Code § 24.2-503, and that Petitioner had filed his complaint on June 10, 2020, disregarding the fact that the signatures on the required petitions had neither been yet tallied nor validated. And further, in patent disregard for Rule 3.4(f), and unmindful that "[t]here is no cause for consternation when a person who believes in good faith and on the basis of accurate information regarding his legal rights that he has suffered a legally cognizable injury turns to the courts for a remedy: "we cannot accept the notion that it is always better for a person to suffer a wrong silently than to redress it by legal action", *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 105 S. Ct. 2265, 85 L. Ed. 2d 652 (1985) (quoting *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), Respondent sought to bolster a weak argument by engaging in *ad hominem* argument, attempting to disparage the character of Petitioner by

citing his history of litigations as something evil, a *pro se* litigant who grew up shadowing his father's best friend, Raymond E. Brown, Esq., as in evidence at Exhibit **B**, a prominent civil rights litigator and criminal defense attorney, in courts.

48. In the congressional district that has decided the outcome of statewide elections for the past two decades, in which the incumbent has declared that election the most important one of his lifetime, pitted against the top five fundraising challengers in the history of the district, a denial of access to the ballot for that challenger represents a chilling effect on the full array of liberties expressed in the *First Amendment*. The Petitioner's campaign was the first to bring a Free Exercise Clause legal challenge to the lockdown orders, the only litigant to raise the Establishment Clause in a challenge to facial coverings, in a campaign where the Fourth Estate has exercised a disciplined silence, despite retraction of liberties on rights to peaceable assembly and unlawful barriers to the rights to petition government to redress grievances.

49. Abundantly clear, therefore, brought in bad faith and in violation of legal ethics, with no demonstration of prejudice to Respondent, it was a clear abuse of discretion to grant a demurrer and under the doctrine of laches, and the matter should properly be reversed and remanded to the Trial Court for proper disposition.

50. Accordingly, it would behoove all concerned and the interests of justice to grant this petition for writ of mandamus to compel Respondent State Board of Elections to apply the pandemic exception that was granted to the plaintiff in *Omari Faulkner for Virginia* to him, as a similarly situated party is entitled under the *Equal Protection Clause*.

Writ of Mandamus Remains as Proper as When as It Was First Denied

51. As given full expression by the Court in *Richlands Medical Ass'n v. Com.*, 230 Va. 384, 386, 337 S.E.2d 737 (1985), ""[a] ministerial act is 'one which a person performs in a given state of facts and prescribed manner in obedience to the mandate of legal authority without regard to, or the exercise of, his own judgment upon the propriety of the act being done," and, upon petition to the Trial Court, Petitioner sought first to enjoin Respondent from tallying and validating petition signatures sought pursuant to his right granted under Va. Code § 24.2-504, and presented for perfection under Va. Code § 24.2-506, and, thereby, to compel Respondent to perform the ministerial act, requiring no judgment, of simply applying the pandemic threshold establish by that same Trial Court that had decided the matter in *Omari Faulkner for Virginia, et al. v. Virginia Department of Elections, et al.*, Case No. CL-20-1456 (Richmond GDC. 2020), *on appeal Omari Faulkner for Virginia, et al. v. Virginia Department of Elections, et al.*, Case No. VLW 020-8-024 (Richmond Cir. 2020), as would be expected with equal protection of the laws, and further an action appropriate for third party standing under the recent decision in *June Med. Svc., LLC v. Russo*, 591 U.S. ___ (2020).

52. Yet and still, by signed pleading, certifying that Respondent had "read the pleading, motion, or other paper, . . . to the best of his knowledge, information and belief, formed after reasonable inquiry, [that] it is well[-]grounded in fact and is warranted by existing law or a

good faith argument for the extension, modification, or reversal of existing law, and. . . it is not interposed for any improper purpose, such as to harass or to cause unnecessary[ily] delay or needless[ly] increase in the cost of litigation," in accordance with Va. Code § 8.01-271.1, did aver in a motion to dismiss that Petitioner's claim was barred by an improper application of the writ of mandamus, for which Respondent can present no credible defense.

53. In the congressional district that has decided the outcome of statewide elections for the past two decades, in which the incumbent has declared that election the most important one of his lifetime, pitted against the top five fundraising challengers in the history of the district, a denial of access to the ballot for that challenger represents a chilling effect on the full array of liberties expressed in the *First Amendment*. The Petitioner's campaign was the first to bring a *Free Exercise Clause* legal challenge to the lockdown orders, the only litigant to raise the *Establishment Clause* in a challenge to facial coverings, in a campaign where the Fourth Estate has exercised a disciplined silence, despite retraction of liberties on rights to peaceable assembly and unlawful barriers to the rights to petition government to redress grievances.

54. Clearly, brought in bad faith and in violation of legal ethics, with no demonstration of prejudice to Respondent, it was a clear abuse of discretion, even in the first instance, to grant a demurrer on this ground of an improper application of a writ of mandamus, and the matter should properly be reversed and remanded to the Trial Court for proper disposition.

55. Accordingly, it would behoove all concerned and the interests of justice to grant this petition for writ of mandamus to compel Respondent State Board of Elections to apply the pandemic exception that was granted to the plaintiff in *Omari Faulkner for Virginia* to him, as a similarly situated party is entitled under the *Equal Protection Clause.*

A Clear Justiciable Issue Exists

56. Respondent has at least erroneously argued that Petitioner averred no justiciable issue of his own right or in representative capacity, on claim that the matter had become moot as law "when the issues presented are no longer 'live' or parties lack a legally cognizable interest in the outcome," relying on the fact that the deadline for soliciting the petition signatures had tolled, under the statute, making the litigation untimely, but, considering the application of the statutes defining abuse of trust, that Court in *U.S. v. Stewart*, 590 F.3d 93 (S.D.N.Y. 2009) (quoting *U.S. v. Allen*, 201 F.3d 163, 166 (2d Cir.2000) (internal quotation marks omitted) observed, "[i]f the defendant abused a position of public or private trust in a manner that significantly facilitated the commission or concealment of the offense," under U.S.S.G. § 3B1.3, the dispositive inquiry "turns on the extent to which the position provides the freedom to commit a difficult-to-detect wrong."

57. By analogy, under law, for purposes of enhancement of criminal penalties, it has been found sufficient to prove that a party "acted with the intent to influence or affect the conduct of government," *U.S. v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011), as revised (Dec. 27, 2011). *See also U.S. v. Dye*, 538 F. App'x 654 (6th Cir. 2013); *U.S. v. Ibrahim*, 529 F. App'x 59 (2d

Cir. 2013). And for this special rule to apply, a party need not achieve his or her purpose. *Chandler v. U.S.*, 171 F.2d 921 (1st Cir. 1948).

58. Respondent is well aware that even after the litigation was commenced the Arlington County Board of Elections still recognized Petitioner as a potential contender on the ballot, subject to a judicial determination regarding the tally of the valid signatures that had been solicited in his endeavors to qualify for the November, as in evidence at Exhibit **C**. Moreover, in detrimental reliance to Petitioner, coronavirus era protocols are even now being implemented to disseminate mail-in ballots from which his name cannot appear, as in evidence at Exhibit **D**, subject to a pendant matter on his qualification. Moreover, in furtherance of some ulterior purpose and illegitimate state interest, Respondent has even gone to the extent to impose a partisan controlling rule upon an otherwise benign qualification procedure, primarily used by independent candidates, in an unscrupulous attempt to distinguish the facts in this matter from that previously decided in the *Omari Faulkner for Virginia* decision.

59. In the congressional district that has decided the outcome of statewide elections for the past two decades, in which the incumbent has declared that election the most important one of his lifetime, pitted against the top five fundraising challengers in the history of the district, a denial of access to the ballot for that challenger represents a chilling effect on the full array of liberties expressed in the *First Amendment*. The Petitioner's campaign was the first to bring a *Free Exercise Clause* legal challenge to the lockdown orders, the only litigant to raise the *Establishment Clause* in a challenge to facial coverings, in a campaign where the Fourth Estate has exercised a disciplined silence, despite retraction of liberties on rights to peaceable assembly and unlawful barriers to the rights to petition government to redress grievances.

60. Clearly, brought in bad faith and in violation of legal ethics, with no demonstration of prejudice to Respondent, it was a clear abuse of discretion to grant a demurrer on this ground of an improper application of a writ of mandamus, and the matter should properly be reversed and remanded to the Trial Court for proper disposition.

61. Accordingly, it would behoove all concerned and the interests of justice to grant this petition for writ of mandamus to compel Respondent State Board of Elections to apply the pandemic exception that was granted to the plaintiff in *Omari Faulkner for Virginia* to him, as a similarly situated party is entitled under the *Equal Protection Clause*.

## RATIONALE FOR ISSUE OF INJUNCTIVE RELIEF

62. The *All Writs Act* exists for the purposes of enjoining a party, provided that it is "defined by 'what is the usage, and what are the principles of equity applicable in such a case.'" *Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund, Inc.*, 526 U.S. 23, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999) (quoting *De Beers Consol. Mines, Ltd. v. U.S.*, 325 U.S. 212, 219, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945)), and such power has been recognized repeatedly against litigants under the rationale that "federal courts have broad powers to protect their judgments

and the integrity of the courts as a whole. Simcox v. McDermott Int'l, Inc., 152 F.R.D. 689, 691–701 (S.D. Tex. 1994) (citing *Villar v. Crowley Maritime Corp.*, 780 F.Supp. 1467 (S.D.Tex.1992), *aff'd*, 990 F.2d 1489 (5th Cir.1993); *In re Martin-Trigona*, 737 F.2d 1254 (2d Cir.1984).), and principles of equity dictate, in this case, that the equal protection, as well as content-based speech at issue, makes the usage of the *Act* proper, nor does such action impose an unreasonable burden. *U.S. v. New York Tel. Co.*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977).

**63.** In accordance with 28 U.S.C. § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**64.** It is well-established that "the granting of an injunction is an extraordinary remedy and rests on sound judicial discretion to be exercised upon consideration of the nature and circumstances of a particular case." *Levisa Coal Co. v. Consolidation Coal Co.*, 276 Va. 44, 662 S.E.2d 44 (2008). However, "if 'the loss entailed upon. . . [the defendant] would be excessively out of proportion to the injury suffered by. . . [the plaintiff], or a serious detriment to the public, a court of equity might very properly ... deny the injunction and leave the parties to settle their differences in a court of law." *Levisa Coal Co.*, 276 Va. at 44, 662 S.E.2d at 44 (citing *Clayborn v. Camilla Red Ash Coal Co.*, 128 Va. 383, 105 S.E. 117 (1920).

**65.** Under principles of equity, an injunction is a remedy "by which a court tells someone what to do or not to do," *eBay Inc. v. MercExchange, L. L.C.*, 547 U.S. 388 (2006), and it plainly is "never awarded as of right." *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008), *see also S.C. Elec. & Gas Co. v. Randall*, 333 F. Supp. 3d 552, 552–76 (D.S.C.2018), *appeal dismissed sub nom. S.C. Elec. & Gas Co. v. Whitfield*, No. 18-1899, 2018 WL 7203223 (4th Cir. Dec. 4, 2018), and, pursuant to Fed.R.Civ.Pro. 65(a)(1), "The court may issue a preliminary injunction only on notice to the adverse party." Moreover, pursuant to Fed.R.Civ.Pro.65(a)(2), "[e]ven when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial. And, pursuant to Fed.R.Civ.Pro. 65(b)(1),

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

66. Although the Virginia Supreme Court has not yet articulated a standard regarding the grant of injunctions, the Courts of the Commonwealth had generally adhered to the rules promulgated by the federal courts in *Blackwelder Furniture Co. v. Seilig Mfg Co., Inc.*, 550 F.2nd 189 (4th Cir. 1977), which applied a balancing test of four factors, *i.e.* the likelihood of irreparable harm to the plaintiff if a preliminary junction is not granted, the likelihood of harm to the defendant if the preliminary injunction is granted, the likelihood that the plaintiff will prevail on the merits, and the public interest, but at least one Commonwealth Court has rejected the balancing test, making mandatory the presence of all the enumerated factors. *Real Truth About Obama, Inc. v. Fed. Elec. Com.*, 575 F.3d 342 (4th Cir. 2009) (citing *Winter v. Natural Resources Defense Council, Inc.*, 129 S. Ct. 365 (2008). However, under the Fourth Circuit has abrogated the balancing test, mandating that all of the factors must be satisfied for an injunction to find issue from a court. *S.C. Elec. & Gas Co.*, 333 F. Supp. 3d at 552.

67. It is well-established under law in the Fourth Circuit that reversible or harmful error, as represented by infringement of substantive rights, constitutes irreparable harm. *Cohen v. Rosenstein*, 691 F. App'x 728, (Mem)–730 (4th Cir. 2017).

68. Under principles of equity, there is no harm when, under lawful order, a court which "tells someone what to do or not to do," ," *eBay Inc.*, 547 U.S., at 388, and "the party asserting the defense of clean hands must come to court with clean hands." *In re Perry*, 423 B.R., at 215. For example, the recent Circuit Court ruling by Judge Moore, regarding the Lee-Jackson memorial statues, affirms the "Duck Rule," that if a memorial looks like a memorial, it is a memorial, requiring the redesignation authority of the legislature to alter it, under the *Memorials and Monuments Act*.

69. It is well-established that , a court will find it proper to reconsider a decision rendered where it may have "applied the wrong standard," *Proffitt v. Com.*, No. 1424-10-2, 2011 WL 5346032, at *1–4 (Va. Ct. App. Nov. 8, 2011), or where its conclusions may be contrary to law, *Com. v. Greer*, 63 Va. App. 561, 760 S.E.2d 132 (2014), and an unlawful decree or order cannot prevail and the greater public interest in preserving the integrity of the courts, and in respect for the informed choices and desires of the residents of Arlington that an injunction should find issue in this instance.

### ***Four Prong Test***

70. It has been stated, "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001) (citation omitted), and it is insufficient to allege that "the harm will occur only in the indefinite future," *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86 (3d Cir. 1992), or

much less if there is just a "mere possibility," *Winter*, 129 S. Ct. 365, and "the moving party must make a clear showing of immediate irreparable harm." *Campbell Soup Co. v. ConAgra, Inc.,* 977 F.2d 86.

71. Nonetheless, it is well-established under law in the Fourth Circuit that reversible or harmful error, as represented by infringement of substantive rights, constitutes irreparable harm, *Cohen v. Rosenstein*, 691 F. App'x 728, (Mem)–730 (4th Cir. 2017), and a denial of Petitioner's statutory right granted under Va. Code 24.2-500, *et seq*., in disparate treatment *vis à vis* other similarly situated parties clearly represents a patent deprivation of a right to equal protection under the law, as guaranteed under the *Fourteenth Amendment*.

72. Moreover, in the context of a political campaign, where regulations of protected content-based speech  strict scrutiny, the irreparable harms constitute a "chilling effect upon the exercise of *First Amendment* rights", *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), nor a "travesty of justice." *Nelson v. Johnson*, 212 F. Supp. 233 (D. Minn. 1962), *aff'd*, 325 F.2d 646 (8th Cir. 1963).

73. There being no circumstances under which such measures could be constitutional, *U.S. v. Salerno*,  481 U.S. 739, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987), a grant of injunctive relief, preventing dissemination of the ballots until such time as required to determine Petitioner's qualification is proper.

74. *Blackwelder Furniture Co. v. Seilig Mfg Co., Inc.*, 550 F.2nd 189 (4th Cir. 1977) applied a balancing test of four factors, *i.e.* the likelihood of irreparable harm to the plaintiff if a preliminary junction is not granted, the likelihood of harm to the defendant if the preliminary injunction is granted, the likelihood that the plaintiff will prevail on the merits, and the public interest, and, in equity, in the public interest, in adherence with the inherent powers of the courts to ensure the administration of justice and in furtherance of the protections of the constitutional rights at issue and the nation's free and fair elections, a grant of injunctive relief presents no unreasonable burden that the bad faith by Respondent did not create and could have prevented.
=

## CONCLUSION

**WHEREFORE,** for the above stated reasons, this Honorable Court should grant the Petition for a Writ of Mandamus to compel Respondent to recognize the pandemic exception for purposes of determining Petitioner's qualification for the ballot, and grant injunctive relief to mitigate harms that demonstrable bad faith should have anticipated and prevented, but not for pursuit of an illegitimate state interest in altering the outcome of a statewide election.  Let's make America great again.

Respectfully submitted, all the above statements are true to the best of my knowledge, and I understand that a false statement in this Verified Complaint may subject me to penalties of perjury.

-19-

Michael D. Webb, a/k/a Major Mike Webb
1210 S. Glebe Rd, #40391
Arlington, Virginia  22204
Phone: (856) 220-1354
Email: GiveFaithATry@gmail.com

Executed on: _____ 9 - 16 - 20 _____   (Date)

Subscribed, acknowledged and sworn to before me, the undersigned Notary Public in the

County of __Richmond_____, in the Commonwealth of Virginia, this

__16th__ day of __September_____, 20 20 _____.

_____
NOTARY PUBLIC

My commission expires: __12-31-23_____   Registration Number: __7843814___

QUINCY BAGGETT
NOTARY PUBLIC
REGISTRATION # 7843814
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES
DECEMBER 31, 2023